UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD E. HAASE, et al.,

        Plaintiffs,

                                         Case No. 08-10927

v.                                       Honorable Julian Abele Cook, Jr.

GUNNALLEN FINANCIAL, INC., et al.,

        Defendants.

## ORDER

This lawsuit arises out of allegations by the Plaintiffs, Donald E. Haase, Douglas K. Haase, and a putative class of potentially similarly situated persons, that the Defendants[1] committed investment fraud by persuading them to invest, through a so-called "Ponzi" scheme, in telecommunication companies that never existed.

One of the Defendants, Questar has filed a motion in which it seeks the dismissal of the amended complaint.[2] For the reasons stated below, Questar's request will be granted.

I.

On September 2, 2008, the Plaintiffs filed an amended complaint in which they contend

---

[1] The persons and/or entities who were originally named as Defendants in this litigation are Frank J. Bluestein, Maximum Financial Group, Inc. ("Maximum"), Questar Capital Corporation ("Questar"), and GunnAllen Financial, Inc. ("GunnAllen"). However, GunnAllen was released from this lawsuit on October 7, 2010 as a result of voluntary bankruptcy proceedings that had been filed in the Middle District of Florida, Tampa Division, which produced a stay of proceedings against the company in this civil action.

[2] From time to time, the Court may refer to Questar herein as the "Company." Unless the language within the text suggests otherwise, a reader should not construe this interchange of words as having any significance or importance to the issues herein.

that the Defendants had violated several provisions of (1) the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, (2) the Securities and Exchange Act, 15 U.S.C. § 78a *et seq*, (3) the Michigan Uniform Securities Act ("MUSA"), (4) the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, as well as (5) other Michigan laws which prohibit negligence, fraud, breach of a fiduciary duty, conspiracy, and unjust enrichment.

When viewed in a light that is most favorable to the Plaintiffs, the pleadings in this action reveal several essential facts. The Plaintiffs, Donald E. Haase and Douglas K. Haase, are residents of the State of Michigan who, along with the other Plaintiffs (Susan Johnson, William Johnson, Frank Ropeta, Lily Ropeta, Steve Ropeta, and Mary Kay Ropeta) claim to have invested in that which they have characterized as unregistered securities at the behest of the Defendants.

One of the named Defendants, Frank Bluestein, was employed as a stock broker and an investment advisor for some of the other Defendants in this litigation. He worked as a registered broker and representative of the Defendant, Questar, which held his license from 2000 through 2005. After leaving Questar, Bluestein assumed the responsibilities of serving as a registered broker and representative of GunnAllen, which held his license until 2007. He also owned and operated Maximum, a Michigan corporation, which maintained its headquarters in Waterford Township.

Questar, with its headquarters in Minneapolis, Minnesota, is registered as a securities broker-dealer with the Financial Industry Regulatory Authority ("FINRA") and the Securities Investor Protection Corporation ("SIPC"). GunnAllen, a Florida corporation, is also registered with the FINRA and the SIPC, and maintains a registration with the National Futures

Association (NFA). According to the Plaintiffs, GunnAllen is a securities broker-dealer and investment advisor that is registered with the United States Securities and Exchange Commission ("SEC") and operational in all fifty states.

Although an attorney, Edward P. May, and his Company, E-M Management ("E-M"), are not parties to this litigation,[3] the Plaintiffs have described them as the initiators of a scheme through which May used E-M to create "phony" telecommunication limited liability companies ("LLCs") with no actual operations and nonexistent revenue streams. It is their contention that Bluestein solicited investors at seminars and induced them to believe that the May LLCs held contracts to provide telecommunication services to businesses, such as hotels and casinos. They maintain that Bluestein, through Maximum, facilitated this investment scheme as a registered agent of Questar and GunnAllen from the very beginning. Furthermore, the Plaintiffs submit that Bluestein, while working as a registered agent and an office manager at one of GunnAllen's branches, solicited investors for the LLCs from his pool of GunnAllen clients between 2005 and October of 2007.

In their pleadings, the Plaintiffs assert that Bluestein acknowledged having made improper sales with the awareness and/or approval of the officials at both Questar and GunnAllen.[4] Furthermore, it is the Plaintiffs' position that both companies, in utilizing business cards and office signage, held Bluestein out to the general public as their registered securities

---

[3]Both May and E-M have filed for bankruptcy and, as a result, neither have been named as defendants in this action.

[4]In one instance, the Plaintiffs claim that Jason Kavanaugh, a former vice president of mergers and acquisitions at Questar, invested his own money into a May LLC. They also allege that Questar employees (Scott Chimmer, Larry Baird and Patrick Swartz) were "specifically and fully" aware of the May LLCs.

agent. Additionally, it is claimed by them that Bluestein, through Maximum, published newsletters which prominently affiliated Bluestein and the securities with GunnAllen and Questar.

In addition, the Plaintiffs contend that Bluestein publicly solicited investments in the LLCs for nearly twelve years. According to them, he guaranteed the Plaintiffs that they would recoup their full investments plus significant returns over the next twelve to fourteen years. It is also their belief that the continued sale of these fraudulent investments and the improper pooling of investor funds permitted him to issue monthly checks to early investors. However, they point out that this scheme began to collapse in late 2006 when investor checks were late and subsequently returned by banks for insufficient funds.[5] Eventually, E-M ceased to issue monthly checks to its investors. In his reaction to the ensuing chaos, May allegedly proffered a variety of excuses for EM's financial woes, including an assessment of blame upon Bluestein.

According to the Plaintiffs, May later filed a lawsuit in the Oakland County (Michigan) Circuit Court, claiming that Bluestein had (1) breached his fiduciary duty by failing to advise him of the need for the investments to be registered as securities, (2) wrongfully absconded with millions of the investors' dollars, and (3) utilized these monies to obtain foreign investments with which to benefit himself. In this lawsuit, May and E-M reportedly admit that they - together with Bluestein and Maximum - obtained funds for investors[6] in "unregistered

---

[5] The Defendants note that despite the impending collapse, Haase purchased additional May deals on November 13, 2006 and April 17, 2007, and continued to encourage other persons to invest, including his three sons, nieces, nephews, and friends.

[6] This putative class of investors purportedly includes approximately 1000 investors nationwide. The Plaintiffs also aver that a majority of this putative class resides in the southeast region of Michigan.

securities."

## II.

The Defendant asks the Court to dismiss the applicable counts against it because it believes that the Plaintiffs have failed to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Generally, when considering a motion to dismiss, a court must construe the complaint in a light that is most favorable to the plaintiffs, accept their factual allegations as being correct, and draw all reasonable factual inferences in their favor. *Tipton v. Corr. Med. Services, Inc.,* No. 08-421, 2009 WL 2135226 (W.D. Mich. July 15, 2009). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Claims are capable of surviving a Rule 12(b)(6) motion only if the "[f]actual allegations [are] enough to raise a right to relief above the speculative level . . . on the assumption that all [of] the allegations in the complaint are true . . . ." *Twombly*, 550 U.S. at 555. As emphasized by *Iqbal*, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is "plausible" on its face:

> [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief [is] . . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief.

*Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)) (internal citations omitted).

## III.

As a preliminary matter, the Plaintiffs concede that they do not seek liability against

5

Questar for Counts I, II, IV, X, XI, XVI,[7] and XVIII. *See generally,* Plaintiffs' Response Brief at p. 6, n. 3; Plaintiffs' Amended Complaint at pp. 33-35, 40-41. Accordingly, the Court will turn its attention to Questar's request to dismiss the remaining claims, i.e. Count III, Counts V-IX, Counts XII-XV and Count XVII.

A.

A "controlling person" shares the liability for violations of securities laws along with the primary violator that it controls. *Sanders Confectionary Products, Inc. v. Heller Financial, Inc*., 973 F.2d 474, 485 (6th Cir.1992). Here, Counts III, V, and VIII of the amended complaint allege that Questar is liable as a "control person" under Section 15 of the Securities Act of 1933, 15 U.S.C. § 77o; Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a); and Section 451 of MUSA, Mich. Comp. Laws. 451.810(a)(1)-(2), respectively. As the parties note, the test for the liability of a "control person" is generally the same under all of the three statutes. The Plaintiffs must first demonstrate Bluestein's liability for securities fraud under the relevant statute, and then prove that Questar directly or indirectly controlled him. *See generally*, *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 696-97 (6th Cir. 2004). For example, section 15 of the Securities Act imposes joint and several liability based upon the conduct of the person controlled:

> Every person who . . . controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge . . . .

15 U.S.C. § 77o. Section 20(a) of the Securities Exchange Act of 1934 contains a similar

---

[7]The Plaintiffs' response does not address Questar's attempt to dismiss Count XVI of the amended complaint.

provision:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter . . . shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . , unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). Analogous language also appears in the Michigan statute[8]:

> (7) The following persons are liable jointly and severally with and to the same extent as persons liable under subsections (2) to (6):
>
> (a) A person that directly or indirectly controls a person liable under subsections (2) to (6), unless the controlling person sustains the burden of proving that the controlling person did not know, and in the exercise of reasonable care could not have known, of the existence of the conduct by reason of which the liability is alleged to exist.

Mich. Comp. Laws § 451.2509(7)(a). Thus, as the Plaintiffs acknowledge, Questar's liability on these counts depends upon an initial finding by the Court that the controlled person was also liable. It is on this basis that Questar believes the Plaintiffs' amended complaint is inadequate.

Questar urges the dismissal of every claim that is rooted in Bluestein's alleged acts of fraud because the Plaintiffs have failed to plead this tort with any degree of particularity, as required by Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA")[9]. Under Rule 9(b), a party who alleges fraud must "state with particularity" the circumstances

---

[8] Mich. Comp. Laws § 451.810(a)(1) and (2), as cited by the parties, was repealed by the Michigan Legislature on October 1, 2009 by Act 551 of the 2008 Public Acts of Michigan. Mich. Comp. Laws § 451.2509(7)(a) appears to be its replacement.

[9] The Supreme Court has opined that meritorious private actions to enforce federal securities laws are "an essential supplement" to criminal prosecutions and civil enforcement actions brought by the Department of Justice and the Securities and Exchange Commission (SEC). However, the PSLRA was enacted by Congress as a check against abusive litigation against companies by private parties.

7

which, in its judgment, constitute fraud. Fed. R. Civ. P. 9(b). At a minimum, a plaintiff must allege the time, place and content of the misrepresentation(s) upon which he relied. *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984).

Additionally, the PSLRA imposes specific pleading requirements for those persons who allege scienter in a case involving private securities fraud under the Securities Exchange Act. Any complaint that attributes false or misleading statements and/or omissions to a defendant must:

> (1) specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed [and]
>
> (2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(1), (2) (emphasis added). *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008). As such, a PSLRA complaint must meet the standards under Rule 9(b) when identifying the fraudulent circumstances and outlining those facts evidencing scienter, "i.e., the defendant's intention 'to deceive, manipulate or defraud.'" *Id.*

The Supreme Court has noted that a complaint under the PSLRA will survive a motion to dismiss as long as "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308 (2007). The failure to meet these standards requires a court to dismiss the complaint upon its receipt of an appropriate dispositive motion from an opposing party. 15 U.S.C. § 78u-4(b)(3)(A).

By contrast, the Plaintiffs contend that their "control person" claims are subject only to

8

the notice pleading standards under Fed. R. Civ. P. 8, and not the heightened standards of Rule 9(b) and the PSLRA. They submit that, when viewed appropriately according to Rule 8, their amended complaint adequately specifies the material misrepresentations by Bluestein about the LLCs. Specifically, the Plaintiffs note that they have made allegations which address (1) the offering of investment contracts based on entirely fabricated offering materials, and (2) oral representations to investors about the LLCs' non-existent contracts, guaranteed payments, and independent audits.

It is well settled that success on a control liability claim "is contingent upon the investors' ability to establish an 'underlying' violation of Section 10(b) and Rule10b-5."[10] *Konkol v. Diebold, Inc.*, 590 F.3d 390, 396 (6th Cir. 2009). Thus, a dismissal will only be avoided if the underlying violation is well-pled. *See generally, In re WorldCom, Inc. Securities Litigation,* 294 F. Supp. 2d 392, 415 (S.D.N.Y. 2003). Here, because the Plaintiffs' underlying allegations against Bluestein under Rule 12 of the Securities Act and Rule 10 of the Exchange Act are rooted entirely in fraud, the Court finds that the heightened pleading standards of Rule 9(b) apply in determining - for the purposes of this motion only - whether the Plaintiffs have sufficiently stated a claim against Bluestein for securities fraud during his tenure at Questar.[11]

---

[10]This is the standard applicable to a §20(a) claim under the Securities Exchange Act, but also generally applies to other control-person liability claims.

[11]Although the Plaintiffs' allegations in Count III seek "control person "liability based on Bluestein's sale of unregistered securities under 15 U.S.C. § 77b(1) – which does not require a showing of fraud -- the Court finds that, under the alleged facts, the 12(1) claim nevertheless is grounded in fraud and still subject to Rule 9(b). *See, e.g.* Amended Complaint (incorporating fraud allegations by reference into ¶ 90 of Count I and ¶ 106 of Count III; describing May and Bluestein's conduct at ¶ 31 as a "scheme to sell fraudulent unregistered securities,"; and suggesting at ¶¶ 103 and 118 that – regardless of whether the securities were registered or unregistered "had the Plaintiffs . . . known of the fraud . . . such securities could not have been

*See generally, Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 948 (6th Cir. 2009) (where violations of the Securities Act are grounded in fraud, the heightened pleading standards of Rule 9(b) govern); *Ellison v. American Image Motor Co., Inc.*, 36 F. Supp. 2d (S.D.N.Y. 1999) (§ 12 claims under 1933 Act do not necessarily sound in fraud - but when they do by virtue of complaint, including any incorporation by reference, such allegations must be pled with particularity).

In light of these standards, the Court finds that the Plaintiffs have not pled with any particularity that Bluestein made an intentional misrepresentation or omission to investors about the LLCs while he was an agent of the Company. An example of this inadequacy is found in ¶ 51 of the amended complaint, in which the Plaintiffs claim that Bluestein - in "Letters from the Editor" from Maximum - "made promises and assurances to the investors as to financial and investment topics and events, including the LLCs." To support this claim, the Plaintiffs direct the readers' attention to a sample letter dated November / December 2003 which contains the following notation along the bottom: "Securities offered through Questar Capital, Member NASD, SIPC. Maximum Financial is independent of Questar Capital." Yet, as Questar notes, a review of the content within this letter reveals that it never mentions the LLCs by name and does not - as required by Rule 9(b) and the PSLRA - identify the time, place, and content of a specific misstatement by Bluestein.

Similarly, the Plaintiffs have charged Bluestein with inducing investors to purchase the LLCs by using certain fraudulent offering documents – including a Private Offering Memorandum and sample contracts – that were undated or reflected dates in May and August of

---

sold at any price.").

10

2006. Yet, the Plaintiffs acknowledge that Bluestein had terminated his relationship with Questar in 2005[12] on a date which preceded the issuance of these documents.

The Plaintiffs resist this view by urging the Court to treat Questar's motion as premature because their claims against this Company depend upon the respective liabilities of Bluestein and Maximum, neither of which have been decided by the Court. Thus, they posit that a determination of Questar's liability must wait until those questions which address the respective liabilities of Bluestein and Maximum in this matter are fully resolved. However, the Court finds his argument – unsupported by case law or other precedent – to be unavailing. Questar has a right, as a defendant, to assert the remedies to which it is entitled under the procedural rules.

Ultimately, the Plaintiffs have not carried their burden. Although the amended complaint clearly identifies the nature of the misrepresentations by Bluestein in 2006, it is devoid of an allegation which fairly and reasonably identifies any misleading statements by him during a time and place that can linked to his association with Questar. By its terms, the amended complaint routinely grouped Questar with allegations that appeared to apply only to GunnAllen. In so doing, it failed - as required by Rule 9(b) - to plead a sufficiency of specific facts that would identify fraudulent conduct which could be attributed to each Defendant. In light of the clear admonition in Rule 9(b) which indicates that a complaint must state "with particularity" the circumstances constituting fraud, including the time, place and contents of the

---

[12]There is a lack of clarity among the parties about the date on which Bluestein left Questar. For its part, Questar contends that he was no longer employed with the Company after March 31, 2005. Yet, the Plaintiffs opine in ¶ 22 of their amended complaint that Bluestein was a registered broker and representative of Questar "from 2000 to sometime in 2005. . . ."

alleged misrepresentation(s), the Plaintiffs' failure to identify the challenged remarks by Bluestein while affiliated with Questar must fail. Because the adequacy of pleading these predicate claims against Bluestein and Maximum is key to a finding of "control person" liability, Questar's motion to dismiss Counts III, V, and VIII (i.e., the "control person" counts) against it must be granted.

B.

In Count VI of the amended complaint, the Plaintiffs have accused Questar of violating § 301 of MUSA, which prohibits the sale of unregistered securities. *See generally,* Mich. Comp. Laws §451.701(1) and § 451.810(a)(1) (repealed by Act 551 of the Public Acts of Michigan of 2008, effective October 1, 2009). The current version of that law now appears at Mich. Comp. Law § 451.2301(c) (a person "shall not offer or sell a security in this state unless . . . (c) [t]he security is registered under this act.").

Similarly, Count VII of the amended complaint alleges that Questar violated § 410 of MUSA, which prohibited the offer or sale of a security by means of an untrue statement or omission of a material fact. *See generally,* Mich. Comp. Law § 451.810(a)(2) (repealed by Act 551 of the Public Acts of Michigan of 2008, effective October 1, 2009). The current version of § 451.810(a)(2) now appears at Mich. Comp. Law § 451.2509(2) ( "[a] person is liable to the purchaser if the person sells a security in violation of section 301, or by means of an untrue statement of a material fact or an omission . . . .").

Questar urges the Court to dismiss Counts VI and Count VII because of the Plaintiffs' failure to specifically allege that it – not Bluestein, Maximum, or the Defendants generally – "sold" a security to them as required by the language of Mich. Comp. Laws § 451.2301(c) and §

451.2509(2). As to Count VII, Questar also seeks to obtain an order of dismissal because of the Plaintiffs' failure to allege that it, through one of its representatives, made a material misstatement or an omission of a fact. Citing *Vennittilli v. Primerica, Inc.*, 943 F. Supp. 793, 798 (E.D. Mich. 1996), Questar argues that the Plaintiffs cannot satisfy their burden by making so-called undistinguished group allegations. *Vennittilli* at 798 ( "multiple defendants must be distinguished, and if they are not, the complaint is inadequate . . . .") (quoting *Benoay v. Decker,* 517 F. Supp. 490 (E.D. Mich. 1981), *aff'd* 735 F.2d 1363 (6th Cir.1984) ("The complaint . . . may not rely upon blanket references to acts or omissions by all of the 'defendants,' for each defendant . . . is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged.").

In response, the Plaintiffs note that the amended complaint sufficiently alleges that Questar was a statutory seller, in that it passed title or offered to do so, or solicited an offer, or took part in the solicitation process and urged the sale of securities to serve their own or the issuer's interests.[13] Yet, the Plaintiffs responded to this contention in a very cursory fashion by simply arguing that they have "adequately alleged that Questar's conduct and involvement constitutes" the type of urging contemplated by the courts. However, the Plaintiffs' arguments are unavailing. The amended complaint does not identify any specific conduct by Questar that amounts to an "urging" or that, as required by one of the cases cited by the Plaintiffs, the Company "actively participated in the solicitation of an offer to purchase the stock." *Smith v. American Nat. Bank and Trust Co.*, 982 F.2d 936, 942 (6th Cir. 1992). As such, the attempt by the Plaintiffs to characterize Questar as a statutory seller that is subject to MUSA liability must

---

[13]The Plaintiffs cite *Pinter v. Dahl*, 486 U.S. 622 (1988) to support their argument.

13

fail.

In the alternative, the Plaintiffs' effort to hold Questar vicariously liable as a broker-dealer who materially aided in the sale of securities is without merit. As a preliminary matter and as an aside from alleging that Bluestein was "aided" by Questar in making false statements and payment guarantees, the Plaintiffs have failed to identify any specific conduct by Questar that can be reasonably construed as providing "aid" to the unlawful sale of fraudulent and unregistered securities. To the contrary, the Plaintiffs allege that, upon information and belief, Questar actually knew or should have known of the existence of the LLCs. But mere knowledge is not enough. Rather, it is incumbent upon the Plaintiffs to proffer supportable allegations that Questar had engaged in active conduct that "materially aid[ed] in the sale." Mich. Comp. Law § 451.2509(7)(d). And perhaps more significantly, the Plaintiffs only allege primary MUSA liability against Questar pursuant to Section 810(a)(2) of the previous statute (i.e. Mich. Comp. Law § 451.810(a)(2)) in their complaint, despite admonitions from courts that "there is no aider and abettor liability under [Mich. Comp. Law § 451.810(a)]." *See generally, In re Trade Partners, Inc. Investors Litigation,* No. 07-1846, 2008 WL 3875396, *18 (W.D. Mich. Aug. 15, 2008); *Mercer v. Jaffe, Snider, Raitt and Heuer, P.C.*, 713 F. Supp. 1019, 1028 (W.D. Mich. 1989). Inasmuch as the Plaintiffs' amended complaint makes no mention whatsoever of liability under Mich. Comp. Law § 410(b), the Court finds that the MUSA claims as found in Counts VI and VII of the amended complaint cannot prevail as a matter of law. Therefore, Questar's motion to dismiss as to these two counts is granted.

C.

The remaining counts at issue in the amended complaint allege common law causes of

action against Questar.  Specifically, Count IX accuses Questar of failing to supervise Bluestein; Count XII pleads respondeat superior; Count XIII alleges apparent authority; Count XIV claims breach of fiduciary duty; Count XV accuses Questar of negligence; and Count XVII sets forth a claim of unjust enrichment.

The Plaintiffs correctly note the error in Questar's argument that their common law claims are pre-empted by MUSA.  To the contrary, MUSA contains a provision which notes that the remedies provided by the statute "are in addition to any other rights or remedies that may exist. . . ."  Mich. Comp. Law § 451.2509(13).  Thus Questar's motion to dismiss the amended complaint on this basis must be rejected.

That notwithstanding, these remaining counts must also fail.  Because they are closely related, the Court will treat Count IX (failure to supervise), Count XII (respondeat superior), Count XIII (apparent authority), and Count XV (negligence) as one and the same – to wit, causes of action premised upon Questar's failure, as an entity with authority over Bluesten, to uncover his fraudulent activity.  To establish a prima facie case of negligence, a plaintiff must prove the following elements; namely, "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Case v. Consumers Power Company*, 463 Mich. 1, 6 (2000).  However, the Court finds that like the statutory remedies, the Plaintiffs' common law claims also depend on Questar's alleged failure to monitor Bluestein's and Maximum's fraudulent conduct while associated with the Company.  For example, Count IX (failure to supervise) begins by outlining Questar's duty to supervise representatives like Bluestein.  Yet, it quickly becomes clear that such supervision is necessary to avoid misleading investors into believing the LLC deals were "cloaked" with Questar's goodwill and credibility.

15

*See* Amended Complaint at ¶¶ 140-41. Moreover, a closer review of Count IX reveals that the gravamen of the Plaintiffs' claim is entirely based on fraud. The Plaintiffs imply that they sustained an injury because of Questar's alleged failure to properly exercise its supervisory responsibilities which, in turn, allowed "Bluestein and Maximum . . . to sell the above described fraudulent investments." Although these counts have been cast as being grounded in negligence, the Court believes the claims are also wholly dependent upon Bluestein's alleged misrepresentations. *See also,* Amended Complaint at Count XII, ¶ 163 (Respondeat Superior) ("Defendant Questar was negligent and/or reckless in permitting Defendants Bluestein and/or Maximum to market the worthless interests in the LLCs."; ¶ 167 ("Therefore Defendant[ ] Questar . . . [is] liable to Plaintiffs . . . under the theory of respondeat superior . . . for Defendants Bluestein's and/or Maximum's fraud and negligent misrepresentation."). Because the Court is not persuaded by the nominal differences between those aspects of the complaint that are plainly rooted in fraud, these counts must be dismissed because of (1) the Plaintiffs' failure to meet the heightened pleading standards of Rule 9(b) in identifying, with particularity, Bluestein's alleged misconduct while affiliated with Questar, and (2) the Plaintiffs' related failure to allege a breach of any duty owed by Questar during the relevant time period.

Given the cursory treatment that was given by the Plaintiffs to these issues in their responsive brief, the remaining two counts of the amended complaint only merit a limited discussion. Count XIV (breach of fiduciary duty) must be dismissed because - contrary to the representations by the Plaintiffs - they have not stated a legally sufficient claim for breach of a fiduciary duty against Questar. As is evident from a reading of the pleadings, the Plaintiffs have not pled that any accounts allegedly held by Questar were discretionary. *First of Michigan*

*Corp. v. Swick,* 894 F. Supp. 298, 299 (E.D. Mich. 1995) ("generally, a fiduciary relationship only arises between a broker and his client where the account is discretionary, which means that the broker determines the investments to be made")(citing *Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 461 F. Supp. 951 (E.D. Mich.1978), *aff'd* 647 F.2d 165 (6th Cir.1981), and *Davis v. Keyes*, 859 F. Supp. 290 (E.D. Mich. 1994)).

Finally, the Plaintiffs' final count (unjust enrichment) must also fall. This cause of action requires a plaintiff to establish "(1) the receipt of a benefit by the defendant from the plaintiff and (2) an equity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v. Centerline Piping, Inc*., 273 Mich. App. 187, 193 (2006). However, other than noting that the Plaintiffs tendered monies to Questar which were neither refunded or returned, the amended complaint reflects little more than a formulaic recitation of the elements of such a claim. Under the principles that were articulated in *Iqbal* and *Twombly, supra*, these allegations are insufficient as a matter of law.

IV.

Therefore, for the reasons that have been stated above, the Court must, and does, grant Questar's motion to dismiss the amended complaint in its entirety and with prejudice.

IT IS SO ORDERED.

Dated:  February 28, 2011            s/Julian Abele Cook, Jr.
         Detroit, Michigan            JULIAN ABELE COOK, JR.
                                      United States District Court Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on February 28, 2011.

                s/ Kay Doaks
                Case Manager